Swing, J.
In the court of common pleas the plaintiff filed a petition to which defendants filed a demurrer, which demurrer was overruled; thereupon the defendants filed an answer, to which plaintiff demurred, which demurrer was sustained; thereupon defendants not desiring to plead further, judgment was entered as prayed for in the petition; thereupon defendants gave notice of appeal, and the case was after-wards brought into this court.
On the hearing in this court the whole case, as made by *17 tbe petition, answer and demurrers, was heard together, and we will dispose of it in that way.
The petition and answer are as follows:
“For cause of action plaintiff alleges that he is a tax-payer in the county of Hamilton, Sate of Ohio; that defendants, Frederick Bader, Henry Korb and John Breen, constitute the Board of County Commissioners of Hamilton county, Ohio; that defendants, Lloyd Baen, J. R. McGavin and Conrad Klein assume and claim to be trustees appointed under authority of a pretended act of the General Assembly of Ohio, entitled, “An act to authorize the Commissioners of Hamilton county, Ohio, to levy a tax for improving, grading and macadamizing Indian Hill Avenue,in Columbia Township, and for other purposes,” passed by the General Assembly May 1, 1894.
“Plaintiff says on or about the 15th day of May, 1896, as such tax payer, be presented to the prosecuting attorney for said county of Hamilton, a written request to apply by civil action in the name of the state of Ohio, to a court of competent jurisdiction, for an injunction restraining said defendants from taking further action, with a view to improving, grading or macadamizing Indian Hill Avenue, in Columbia township, Hamilton county, Ohio, or any other action whatsoever pursuant to said pretended act of the General Assembly of Ohio,for the reason that said pretended act is unconstitutional and invalid, and the exercise of the powers conferred and duties imposed upon said Board of County Commissioners and trustees by said act would result in tbe misapplication of the funds of the county and the entering into of contracts in contravention of the laws of this state.
“Plaintiff says that said pretended act is found in Vol. 91, page 679, Ohio Laws.
■ “Plaintiff says that said defendants have already proceeded to act under said pretended act of the General Assembly, so as to appropriate property for the purpose of widening said avenue, and are about to enter into further contracts for said improvement, and to carry out the provisions of said pretended act.
“Plaintiff says that said pretended act of the General *18 Assembly is unconstitutional and invalid, and that, unless restrained by this court, defendants will proceed to award and enter into contracts for the making of such improvement, by grading, paving, etc., and will issue bonds of the county to pay for the same, and do all and singular the acts which they are authorized or required to do by the terms of said act, and that to carry out the provisions of said act would result in the misapplication of the funds of the county, and the entering into of contracts in contravention of the laws of this state.
“Wherefore plaintiff prays that the defendants may be' enjoined until further order of court, from taking any further action as members of said Board of County Commissioners and trustees respectively, with a view to improving, grading, macadamizing or widening said avenue, and from issuing bonds or levying any taxes or expending any money with a view to carrying out the provisions of said act, and that upon final hearing said order of injunction may be made perpetual, and for such other proper relief as in equity plaintiff may be entitled to.”
To this petition the following answer was filed:
“Now come defendants, Frederick Bader, Henry Korb and John Breen, Commissioners of Hamilton county, Ohio, and for answer to plaintiff’s petition, say, that they admit that they constitute the Board of County Commissioners of Hamilton county, Ohio.
“They admit that the General Assembly of Ohio, on the first of May, 1894, passed an act entitled, “An act to authorize the Commissioners of Hamilton county', Ohio, to levy a tax for improving, grading and macadamizing Indian Hiil Avenue, in Columbia township, and for other pur-, poses”; said act is found in vol. 91,page 679, Laws of Ohio.
“Defendants further say, that in acccordance with and' in pursuance with section 7 of the said act, they, as Commissioners of said Hamilton county, Ohio, levied and assessed on the grand levy of taxes, on the taxable property of said Hamilton county, a tax of two-tenths (2-10) of a mill on each dollar valuation thereof, one-half of which *19 was assessed and collected on the tax-duplicate of the year 1894, and the remainder on the tax duplicate of the year 1895. for the purpose of creating a fund for carrying out the provisions of the said act.
“That there is now to the credit of the said fund, in the treasury of Hamilton county, Ohio, as aforesaid, assessed and collected, the amount of $— ----- — , which was paid by the tax payers of said county, without objection or protest.
“Defendants further say that in accordance with the provisions of said act, said Hamilton county acquired title by dedication and releases of the right of way through certain lands in said Columbia township, for the purpose of improving said road in accordance with the said act aforesaid. And that the compensation to be paid for certain other lands necessary for the right of way of said avenue was ascertained in appropriation proceedings, but was never paid.
“Defendants further deny each and every other allegation in plaintiff's petition contained, not hereinbefore specifically admitted.
“Wherefore defendants pray that the petition of plaintiff may1 be dismissed, and for their costs herein expended,”
The act above mentioned is found on page 679 Ohio Laws, Vol. 91. It authorized the Commissioners of said county to improve a road to be known as Indian Hill Avenue. They were authorized to appoint trustees to obtain rights of way and make surveys, to appropriate property, and to levy a tax of 2-10 of a mill on each dollar, one half to be collected in the year 1894, and the other half in the year 1895. Under the provisions of this act the tax has been collected, the trustees appointed, surveys made, rights of way procured and condemnation proceedings terminated, with the exception of paying over the amounts awarded by the jury, and the county has incurred heavy costs, and the Commissioners were about to award the contract for the building of the avenue.
Up to the time of the filing of this petition no objection had ever been made by any taxpayer to the paying of this *20 tax. What are the rights of a tax-payer in a court of equity under these circumstances?
. The sole ground for the relief asked is that the law is unconstitutional. There is no claim that the Commissioners are, in any way, violating the law itself, or are not in good faith and correctly carrying out this particular law according to its terms. Speaking for myself, I very much question whether sections 1777-8, Revised Statutes,under which this action is brought, applies to the question here raised, But without passing upon this matter, we come to the consideration of the question above put. Courts are always reluctant to hold acts of the legislature unconstitutional in whatever form the question is presented, and especially is this true of courts which are not courts of last resort. And it is not in every case that courts will enter into a consideration of the question whether a law is constitutional or unconstitutional.
The Supreme Court of the United States, in the case of Stuart v. Laird, 1 Cranch 309, speaking to a constitutional question raised in the case, say:
“To this objection, which is of recent date, it is sufficient to observe that practice and acquiescence under it for a period of several years, commencing with the organization of the judicial system, affords an irresistible answer, and has indeed fixed the construction. It is a contemporary interpretation of the most forcible nature, This praclical exposition is too strong and obstinate to be shaken or controlled. Of course, the question is at rest, and ought not to be disturbed.”
Mr. Justice Curtis, in the Dred Scott case, 19 Howard, on page 616, says:
“A practical construction, nearly contemporaneous with the adoption of the constitution, and continued by repeated instances through a long series of years, may always find influence, and in doubtful cases should determine the judicial mind on a question of the interpretation of the constitution. ”
*21 In the case of Prigg v. The Commonwealth, 16 Peters, on page 621, the Supreme Court of the United States say:
“Under such circumstances, if the question were one of doubtful construction, such long acquiescence in it, such contemporaneous expositions of it, and such extensive and uniform recognition of its validity would, in our judgment, entitle the question to be considered at rest, unless, indeed, the interpretation of the constitution is to be delivered over to interminable doubt throughout the whole progress of legislation, and of national operations in Congress. The executive and the judiciary have upon various occasions acted upon this as a sound and reasonable doctrine.”
In two cases recently decided by the Supreme Court of the United States, not yet officially reported, The United Statesv. The Realty Company, and The United States v. Gay, known as the Sugar Bounty cases,in which the constitutionality of the act of Congress of March 2,1895, was sought to be brought in question, that court declined to' consider whether the act was constitutional or not, declaring that at that time it would be inequitable to do so, evidently going on the theory that the’time to have raised this question was before those affected by it had gone and acted upon it.
While it may well be said that these cases are^not directly in point on the question here presented, still they clearly show the reluctance of our courts to be continually and everlastingly bringing into question the constitutionality of the acts of the legislature. What the people want and need is stability in legislation, and confidence in its correctness, and this can never be attained if at any or all times it may be called in question.
Coming now more particularly to the position occupied by the plaintiff here. This is a suit in equity, and must be governed by equitable principles. An injunction is sought. It is an extraordinary remedy, to be granted only upon the clearest showing of right.
It is true that the plaintiff is here not as an individual, *22 but in a representative capacity. But it is clear to us that this in no wise changes-or betters his standing-in a court of justice. The tax-payer or citizen,acting in a representative capacity, stands the same as one in an individuabcapacity. If he has an equitable action, has been diligent and alert, comes into court with clean hands, having done equity, he may have a standing, otherwise not.
In the case of Babcock v. The City of Font-Du-Lac, 58 Wis.,230, the first proposition of the syllabus is as follows:
“One who voluntarily pays a void tax with knowledge of the facts rendering it void, cannot recover back the amount so paid, nor can he maintain an action to restrain the application of the money raised by such tax to the purpose for which the tax was levied.”
The Court, in the opinion, say:
“This is a bill in equity, and to maintain the action the plaintiff was bound to present, affirmatively, such a case as would entitle him to equitable relief. The substance of the allegations of the complaint is that the plaintiff was a resident, free-bolder and tax-payer in the city, and that the contract was void, because it created a debt in excess of the constitutional limitation. The action is not brought to prevent any injury, or resist any burden, nor to restrain any diversion of any fund from the purpose for which it was raised, to a different use. On the contrary, the only object of the action seems to have been to prevent the money from being applied to the very purpose for which the tax was levied, the money paid and appropriated * * * There are no equitable considerations why the court, at the instance of the plaintiff, should interpose to prevent the doing what the plaintiff and other tax-payers voluntarily put it in the power of the city and its officers to do. The contribution having been voluntarily made to a particular fund for the purpose of having it applied to a particular object, the plaintiff as such contributor cannot now successfully invoke the aid of equity to prevent such application.”
In the case of Kellogg v. Ely, 15 Ohio St. 66, the court say:
Theo. Horstman, for Alter.
Win-. Renrfigs, County Solicitor, J. T. Demar and A.J. Cunningham, for defendants.
“We do not find it necessary to determine any one of the many questions made and argued by counsel in the case as to the legality or illegality of the proceedings by which this ditch was established; because, if we take for granted all that plaintiff below claims in this respect, we are of opinion that he does not make out such a case as to entitle him to a remedy by injunction at the hands of a court of equity. It is not for every threatened violation of the legal rights of a party that a court of equity will intervene with its preventative remedy by injunction, even in cases where that remedy would be efficient. A party appealing to a court of equity must make a case which can commend itself to the conscience of the court.”
These last two cases bear directly on the matter here in controversy.
No complaint was made as to this law or this tax by any tax-payer. The tax was all paid without a single protest. Taxes paid under well-settled law can not be recovered back by the tax-payer, and by well-settled law they can not be expended for purposes other .than that for which they were levied. It would, therefore, have to remain in the treasury at least until some legislative action might be had in regard to it. And at the same time, there is no claim made that the money is not to be expended in accordance with the act under which it was collected.
We are unable to see any equity in plaintiff’s case. If the act in question was unconstitutional, he should have spoken before the tax was levied and collected, and before those who were compelled or authorized to act under it had acted; then a court of equity would have listened to him; but now it is too late, and we will not consider whether the law is constitutional or not. The petition will be dismissed.